**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHANI GUTIERREZ,                          )        NO. ED CV 11-1650-E
                                          )
            Plaintiff,                    )
                                          )
     v.                                   )        **MEMORANDUM OPINION**
                                          )
MICHAEL J. ASTRUE, COMMISSIONER           )
OF SOCIAL SECURITY,                       )
                                          )
            Defendant.                    )
_____ )

**PROCEEDINGS**

     Plaintiff filed a Complaint on October 25, 2011, seeking review
of the Commissioner's denial of benefits.  The parties filed a consent
to proceed before a United States Magistrate Judge on November 8,
2011.

     Plaintiff filed a motion for summary judgment on March 23, 2012.[1]
Defendant filed a cross-motion for summary judgment on April 19, 2012.

---

[1]     Plaintiff's motion violates paragraph VI of this
Court's "Order," filed October 27, 2011.  Counsel for Plaintiff
shall heed the Court's orders in the future.

1  The Court has taken both motions under submission without oral

2  argument.  See L.R. 7-15; "Order," filed October 27, 2011.

3

4              **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

5

6      Plaintiff alleges disability since August 9, 2007, based on

7  alleged "chronic [hepatitis] C, [cirrhosis] of the liver, severe

8  fatigue, complications breathing, bones ache, muscle cramps[,]

9  [d]epression and anxiety" (Administrative Record ("A.R.") 114-121,

10 135).[2]  An administrative law judge ("ALJ") examined the record and

11 heard testimony from Plaintiff and a vocational expert (A.R. 21-42).

12

13     The ALJ found that Plaintiff has severe cirrhosis of the liver

14 secondary to hepatitis C, but retains the residual functional capacity

15 to perform a full range of medium work, limited only by not working

16 with heavy machinery (A.R. 13-14).  The ALJ found, inter alia, that

17 with these limitations Plaintiff could perform her past relevant work

18 as a nurse assistant, quality control inspector, assembler of small

19 products, and general clerk "as actually and generally performed"

20 (A.R. 16-17 (adopting vocational expert testimony at A.R. 36-40)).

21 Consequently, the ALJ found Plaintiff not disabled.  Id.  The Appeals

22 Council denied review (A.R. 1-3).

23 ///

24 ///

25 ///

26 ///

27 _____

28        [2]   Plaintiff filed later applications for benefits
   alleging the same onset dates (A.R. 122-28).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

This Court "may not affirm [the Administration's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Administration's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and quotations omitted); see Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's

findings are supported by substantial evidence and are free from

material[3] legal error.  Plaintiff's contrary contentions are

unavailing.


I.    **Substantial Evidence Supports the Conclusion Plaintiff Can Work.**


Substantial evidence supports the ALJ's finding that Plaintiff is

not disabled.  Consultative examiners found Plaintiff to be

essentially unimpaired, and Plaintiff's treating physician offered no

opinion regarding Plaintiff's functional capacity.


A.    **Summary of the Medical Record**


Dr. Rakesh Chopra began treating Plaintiff in January 2007 for

hepatitis, which was discovered during a routine physical examination

(A.R. 277-78).  Dr. Chopra's available treatment records consist

primarily of laboratory reports from blood tests and letters (A.R.

219-78).  A liver core biopsy performed on March 6, 2007, showed

findings suggestive of chronic hepatitis C, grade 2-3, with some

fibrosis (A.R. 187-88; see also A.R. 230-31 (ultrasound of same date

showing no evidence of intrapelvic abnormality)).


Blood tests also showed evidence of liver disease.  Plaintiff's

"HCV RNA, Qualitative" measures were well above the reference range.

See A.R. 222, 240, 250 (tests showing virus levels of 724,000,

_____

[3]    The harmless error rule applies to the review of
administrative decisions regarding disability.  See Burch v.
Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

240,000, and 162,000, over the course of Plaintiff's treatment).[4]
Hepatic function blood panels from January and August 2007, and from
April and May 2008, showed that Plaintiff's "AST" and "ALT" levels
were elevated above the reference ranges, whereas a test from January
2008 showed AST and ALT levels within the reference ranges (A.R. 236,
238, 241, 245, 251).[5]  Other tests from August and September 2007
showed elevated AST levels only (A.R. 242-44).  A hepatic function
blood panel from February 18, 2009, showed that Plaintiff's albumin
was slightly below the reference range, but otherwise her results were
within the reference ranges, including her AST and ALT levels (A.R.
220).  When Plaintiff was tested again on March 31, 2009, her hepatic
function blood panel showed that Plaintiff's albumin was slightly
below the reference range, but her AST and ALT levels once again were

---

[4]    The HCV RNA, Qualitative test is reported as positive
or detected if any hepatitis viral RNA is found.  The test:

> detects and measures the number of viral RNA particles
> in the blood.  Viral load tests are often used before
> and during treatment to help determine response to
> treatment by comparing the amount of virus before and
> during treatment (usually at several points in the
> first three months of treatment).  Successful treatment
> causes a decrease of 99% or more (2 logs) in viral load
> soon after starting treatment (as early as 4-12 weeks)
> and usually leads to viral load being not detected even
> after treatment is completed.

See American Association for Clinical Chemistry, Hepatitis C
(available online at http://labtestsonline.org/understanding/
analytes/hepatitis-c/tab/test (last visited May 22, 2012)).

[5]    AST (aspartate aminotransferase) and ALT (alanine
transaminase) are enzymes found in high amounts in the liver.
Diseases that affect liver cells increase the levels of AST and
ALT.  See AST (available online at http://www.nlm.nih.gov/
medlineplus/ency/article/003472.htm (last visited May 21, 2012)),
and ALT (available online at http://www.nlm.nih.gov/medlineplus/
ency/article/003473.htm (last visited May 21, 2012)).

above the reference ranges (A.R. 227).

An October 5, 2007 letter from Dr. Chopra states that Plaintiff
has chronic hepatitis C with complaints of excess fatigue, weakness,
lack of energy, and generalized muscle aches and pains, "likely due to
hepatitis C" (A.R. 271).  A March 10, 2008 letter states that
Plaintiff then had been treated for six months for her hepatitis and,
while her viral load had come down from 75,000 to 25,000 suggesting a
"partial response," Dr. Chopra opined that Plaintiff "obviously is not
a responder" (A.R. 269).

The last letter from Dr. Chopra is dated May 1, 2009, and
provides:

> This letter is to inform the condition of our patient Shani
> Gutierrez.  Ms. Gutierrez has stage 3 liver disease and has
> undergone treatment for her condition twice already.  While
> undergoing treatment, Ms. Gutierrez was non-responsive to
> both treatments tried.  Due to the heavy dosage of the
> treatment, patient experiences severe side effects such as
> anemia, hair lost [sic], depression, pain, and insomnia.  If
> you have any further questions or concerns, please feel free
> to contact my office.

(A.R. 219).  Dr. Chopra did not indicate what other options may be
available for treating Plaintiff's liver disease, and did not offer an
opinion concerning any restrictions on Plaintiff's ability to work.
///

Dr. Bryan To performed an independent internal medicine evaluation of Plaintiff dated February 4, 2009 (A.R. 193-97). Plaintiff reported current liver treatment with Infergen and RibaPak,[6] with side effects of fatigue, nausea, and muscle and bone pain (A.R. 193). Dr. To ordered a hepatic function blood test that showed an "AST (SGOT)" level above the reference range but otherwise normal blood references (A.R. 198). Physical examination revealed only complaints of pain on range of motion (A.R. 195-96). Dr. To opined that Plaintiff would be capable of pushing, pulling, lifting, and carrying 50 pounds occasionally, 25 pounds frequently, standing and walking six hours in an eight-hour workday, sitting without limitation, frequently walking on uneven terrain, climbing ladders, or working with heights, and frequently bending, kneeling, stooping, crawling, and crouching, but could perform no work with heavy and moving machinery (A.R. 196-97).

State agency physician Dr. F. Kalmar completed a Physical Residual Functional Capacity Assessment form for Plaintiff dated February 27, 2009 (A.R. 199-203). Dr. Kalmar reviewed Plaintiff's March 2007 liver biopsy findings, blood test results including the current hepatic function blood test, and Dr. To's evaluation (A.R. 204-05). Dr. Kalmar opined that Plaintiff would have the residual

---

[6]   Infergen is the brand name for an interferon alfacon-1 injection which helps to prevent the hepatitis C virus from growing.  See Interferon Alfacon-1 Injection (available online at http://www.nlm.nih.gov/medlineplus/ druginfo/meds/a601150.html (last visited May 21, 2012)).  Ribavirin is a drug used with an interferon medication to help stop the virus that causes hepatitis C from spreading inside the body.  See Ribavirin (available online at http://www.nlm.nih.gov/medlineplus/ druginfo/meds/a605018.html (last visited May 21, 2012)).

functional capacity to perform medium work with no limitations (A.R. 199-203).   A second State agency physician affirmed the medium residual functional capacity assessment for Plaintiff on June 4, 2009 (A.R. 281-82).

Dr. John S. Woodard performed a complete psychiatric evaluation of Plaintiff dated February 3, 2009 (A.R. 190-92).   Plaintiff reported suffering from depression and anxiety and periodic insomnia, but had never had any psychiatric treatment (A.R. 190).   Dr. Woodard diagnosed Plaintiff with depressive disorder, not otherwise specified, and opined that Plaintiff's prognosis was fair for improvement with appropriate treatment (A.R. 192).   Dr. Woodard opined that Plaintiff would have only "slight" impairment in: (1) interacting with supervisors and coworkers and with the public; (2) maintaining concentration and attention; (3) withstanding normal stresses and pressures in the workplace; (4) performing detailed, complex tasks; and (5) completing a normal workweek without interruption (A.R. 192).

State agency physician Dr. S. Khan completed a Psychiatric Review Technique form for Plaintiff dated March 2, 2009 (A.R. 206-16).   Dr. Khan opined that Plaintiff would have only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace (A.R. 214).   Dr. Khan believed that Plaintiff's psychiatric symptoms do not significantly decrease/impact Plaintiff's ability to function (A.R. 216-18).

///

///

///

B.   **Analysis**

The ALJ found that Plaintiff would be capable of performing medium work based on Dr. To's and Dr. Woodard's consultative evaluations and the State agency physicians' concurrence (A.R. 14-16). The consultative examiners' findings constitute substantial evidence supporting the ALJ's decision.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consulting examiner's opinion is substantial evidence that can support an ALJ's finding of nondisability); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (examining physician's independent clinical findings are substantial evidence).  The opinions of the non-examining State agency physicians provide additional support for the ALJ's decision.  See Tonapetyan v. Halter, 242 F.3d at 1149 (non-examining physician's opinion may constitute substantial evidence when opinion is consistent with independent evidence of record); Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (same).

Having found that Plaintiff retains the residual functional capacity to perform medium work limited only by not working with heavy machinery, the ALJ relied on the testimony of a vocational expert to conclude that a person with Plaintiff's residual functional capacity can perform her past relevant work as actually and generally performed (A.R. 16-17).  The vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision that Plaintiff is not disabled.  See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (vocational expert opinion evidence is reliable to support a finding that a claimant can work if hypothetical

"set[s] out <u>all</u> the limitations and restrictions of a particular claimant") (citation omitted); <u>see also</u> <u>Hubble v. Astrue</u>, 2012 WL 258406, at *2 (9th Cir. Jan. 30, 2012) (finding no error in ALJ's conclusion that claimant was capable of performing her past relevant work as generally performed in the national economy, based on a hypothetical presenting claimant's residual functional capacity).[7]

## II.   <u>The ALJ Did Not Commit Any Material Error in Finding that Plaintiff Can Perform Her Past Relevant Work.</u>

Plaintiff alleges that the ALJ's decision finding that Plaintiff could perform her past relevant work did not sufficiently discuss the physical and mental demands of the work.   <u>See</u> Plaintiff's Motion, pp. 2-5 (citing Social Security Ruling 82-62).   An impairment must prevent a claimant from doing past relevant work; if a claimant can still do her past relevant work, she will be found not disabled.   <u>See</u> 20 C.F.R. § 404.1520(e).   Social Security Ruling 82-62 provides, in relevant part:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.   Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the

---

[7]   The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.   <u>See</u> U.S. Ct. App. 9th Cir. Rule 36-3(b).

individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

See Social Security Ruling 82-62.[8]

A claimant bears the burden of proving that "a physical or mental impairment prevents [her] from engaging in any of [her] previous occupations." Sanchez v. Secretary, 812 F.2d 509, 511 (9th Cir. 1987); see Bowen v. Yuckert, 482 U.S. 137, 146-50 (1987). Plaintiff

---

[8]    Social Security rulings are binding on the Administration. Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

failed to carry this burden in the present case.  The ALJ properly found Plaintiff capable of performing her past relevant work, based on the medical evidence in conjunction with Plaintiff's reported work history, her Social Security earnings record, and the vocational expert's testimony.  See A.R. 17 (citing record including hearing testimony and concluding, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.").  While the ALJ could have explained this portion of the decision more fully, the record was sufficiently developed on the issue of Plaintiff's past relevant work to support the ALJ's conclusions.

In response to questioning from a vocational expert, Plaintiff testified that in her past relevant work as a quality control inspector she lifted five pounds on average (A.R. 36-37).  In her past relevant work as an assembler of small parts, she reportedly just put little parts together (A.R. 37).  In her clerical jobs, Plaintiff reportedly did filing, data entry, and answered phones (A.R. 37).  Plaintiff said those jobs were mostly sitting and did not involve lifting much weight (A.R. 37-38).[9]

---

[9]     In her Disability Report - Adult form, Plaintiff reported that her job as a nurse assistant required her to walk and stand seven hours in an eight-hour day, sit one hour, and kneel seven hours (A.R. 136).  The heaviest weight Plaintiff lifted reportedly was 50 pounds (A.R. 136-37).  In a Work History Report form, Plaintiff reported that her job as a nurse assistant required walking and standing six hours in an eight-hour day, sitting two hours, kneeling one hour, reaching two hours, and writing one hour (A.R. 159).  In that form, the heaviest weight

(continued...)

12

The vocational expert testified that Plaintiff's past relevant work as a nurse's assistant was a medium occupation generally and as performed (A.R. 38). Plaintiff's past relevant work as a quality control inspector and as an assembler of small parts were light occupations generally and as performed (A.R. 38). Plaintiff's past relevant work as a general office clerk was a light occupation, but was sedentary as performed (A.R. 38-39). The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform all of Plaintiff's past relevant work (A.R. 39-40). If the person were limited to light work, she could still perform the inspector, assembler, and clerical jobs (A.R. 40). The vocational expert testified that the testimony given was consistent with the Dictionary of Occupational Titles (A.R. 40).

The ALJ was entitled to rely on this record to find Plaintiff not disabled at step four of the disability analysis. See Social Security Ruling 82-62 (the claimant is the primary source for vocational documentation, and a claimant's statements are generally sufficient for determining the demands of past relevant work); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1983) (claimant's description of past work is considered highly probative); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) ("the ALJ is

---

[9](...continued)
she reported lifting was 25 pounds; Plaintiff used a machine or assistance from other employees to lift objects weighing more than 25 pounds (A.R. 159). Plaintiff reported that her job as a small parts assembler required that she walk one hour in an eight-hour day, sit seven hours, stoop one hour, and kneel one hour (A.R. 160). The heaviest weight Plaintiff lifted in that job was less than 10 pounds (A.R. 160). Plaintiff reportedly could not remember any of her other past work (A.R. 161-65).

1  entitled to rely upon claimant's own description of the duties

2  involved in her former job").

3

4      Assuming, <u>arguendo</u>, the ALJ's step four findings lacked the

5  specificity contemplated by Social Security Ruling 82-62, the error

6  was harmless because the record was adequately developed and supports

7  the ALJ's findings.  <u>Compare</u> <u>Smith v. Astrue</u>, 252 Fed. App'x 820, 823

8  (9th Cir. 2007) (where ALJ made insufficient findings regarding the

9  demands of a claimant's past relevant work, the court held that "at a

10 minimum," the ALJ should have referred to the Dictionary of

11 Occupational Titles or questioned the claimant at the hearing to

12 determine the demands of the past relevant work); <u>see also</u> <u>Butler v.</u>

13 <u>Astrue</u>, 2011 WL 5878367, at *8 (E.D. Wa. Nov. 23, 2011) (finding

14 similar error harmless where substantial evidence supported the ALJ's

15 decision at step four); <u>Jakobs v. Astrue</u>, 2010 WL 3636236, at *8 (C.D.

16 Cal. Sept. 15, 2010) (same, where ALJ expressly relied on vocational

17 expert testimony that was consistent with the Dictionary of

18 Occupational Titles).  Even had the ALJ discussed more specifically

19 the evidence summarized above, the ALJ's decision doubtlessly would

20 have remained the same.  <u>See</u> <u>Batson v. Commissioner of Social Security</u>

21 <u>Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (error is harmless if it

22 "does not negate from the validity of the ALJ's ultimate conclusion").

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

III. **The ALJ Adequately Considered Dr. Chopra's Opinion and Fully and Fairly Developed the Record.**

Plaintiff contends that the ALJ failed properly to consider Dr. Chopra's opinion concerning Plaintiff's condition. Plaintiff alleges that while the ALJ mentioned Dr. Chopra's diagnosis and observations regarding Plaintiff's response to treatment included in Dr. Chopra's May 1, 2009 letter, the ALJ failed to indicate whether he accepted or rejected "Dr. Chopra's opinion." See Plaintiff's Motion, pp. 5-6.

As discussed above, Dr. Chopra offered no opinion concerning Plaintiff's functional capacity. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The ALJ properly acknowledged Dr. Chopra's letter in summarizing the medical record and in finding that Plaintiff has severe cirrhosis of the liver secondary to hepatitis C. See A.R. 13-14, 16. There simply was nothing further from Dr. Chopra for the ALJ to consider. See, e.g., Guerra v. Astrue, 2010 WL 5088774, at *5 (C.D. Cal. Dec. 7, 2010) (rejecting argument that ALJ did not consider the opinion of a treating physician, where the record contained no opinion that claimant's condition caused any particular limitations); Hogle v. Astrue, 2010 WL 3894621, at *7 (C.D. Cal. Sept. 30, 2010) (rejecting argument that ALJ failed to consider opinion evidence where physician's treatment notes provided no opinion concerning the claimant's impairments or limitations, and ALJ's

finding of severe impairment demonstrated that ALJ considered

physician's notes).


Plaintiff also contends that the ALJ erred by not holding the

record open and not contacting Dr. Chopra to clarify "any confusion,"

or "ambiguities or uncertainties" over Plaintiff's limitations or

viable treatment options.  See Plaintiff's Motion, pp. 6-8.  To the

extent Plaintiff suggests that the ALJ did not adequately develop the

record to obtain some kind of evaluation from Dr. Chopra, Plaintiff

has failed to demonstrate any material error.  An ALJ's duty to

develop the record further is triggered only when there is ambiguous

evidence or when the record is inadequate to allow proper evaluation

of the evidence.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir.

2001).  Here, the record was not ambiguous or inadequate so as to

trigger any further duty on the part of the ALJ.  Moreover, no

evidence suggests that any expansion of the record would have altered

the administrative decision.  All of the physicians who offered an

opinion concerning Plaintiff's functional capacity believed that

Plaintiff retained the capacity to work.  Plaintiff's speculation that

Dr. Chopra may have harbored a different, unstated opinion is

insufficient to demonstrate material error.


**IV.   The ALJ Did Not Commit Material Error By Deeming Plaintiff's**
**      Testimony Less Than Fully Credible.**


Plaintiff argues that the ALJ did not properly assess Plaintiff's

testimony regarding her alleged limitations.  See Plaintiff's Motion,

pp. 9-13.  An ALJ's assessment of a claimant's credibility is entitled

1  to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th

2  Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The

3  discounting of a claimant's testimony regarding subjective symptoms

4  must be supported by specific, cogent findings.  See Lester v. Chater,

5  81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d

6  1228, 1234 (9th Cir. 2010) (reaffirming same); Varney v. Secretary of

7  Health and Human Serv., 846 F.2d 581, 584 (9th Cir. 1988) (generally

8  discussing specificity requirement); but see Smolen v. Chater, 80 F.3d

9  1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer

10  "specific, clear and convincing" reasons to reject a claimant's

11  testimony where there is no evidence of malingering).[10]  Contrary to

12  Plaintiff's argument, the ALJ stated sufficient reasons for deeming

13  Plaintiff's testimony less than fully credible.

14

15      Plaintiff testified that she contracted hepatitis by blood

16  transfusion in 1976 (A.R. 25; see also A.R. 234-35 (2006 blood test

17  showing reactive hepatitis C antibody)).  Plaintiff stopped working on

18  August 9, 2007, to begin eight months of chemotherapy treatment for

19  her liver (A.R. 24).  Plaintiff claims she suffers from severe fatigue

20  due to two eight-month rounds of such treatment (A.R. 26).

21

22      [10]    In the absence of evidence of "malingering," most
recent Ninth Circuit cases have applied the "clear and
23  convincing" standard.  See, e.g., Molina v. Astrue, 674 F.3d 1104
(9th Cir. 2012); Taylor v. Commissioner of Social Security
24  Admin., 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v.
Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Carmickle v.
25  Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008); Lingenfelter
v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Ballard v. Apfel,
26  2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting
cases).  In the present case, the ALJ's findings are sufficient
27  under either standard, so the distinction between the two
standards (if any) is academic.
28

Plaintiff's last round of treatment ended in February 2009 (A.R. 26 (inaccurately stating treatment ended in February 2010)).  Plaintiff said treatment was discontinued because her blood cell count was too low, she was non-responsive, and "it was becoming fatal" for her (A.R. 27).

Plaintiff testified that she lives with her sister, who is retired and who supposedly does all the shopping and household chores because Plaintiff assertedly is too tired (A.R. 25, 27-28, 32). Plaintiff has a driver's license, but reportedly does not drive (A.R. 31).  Plaintiff testified that she has to lie down daily due to fatigue and pain in her liver (A.R. 27).[11]

When asked about her alleged problems with depression, Plaintiff replied, "If I don't get a liver transplant, I'm going to die.  Am I supposed to be happy about that?" (A.R. 28).  Plaintiff said she is not yet on the transplant list because she does not have "Medical" and

---

[11]    In a Disability Report - Adult form, Plaintiff reported that she is unable to sit, stand or walk for long periods of time, is unable to lift or carry anything, cannot concentrate or remember things, and is always weak (A.R. 135).  In a Function Report - Adult form dated October 27, 2008, Plaintiff reported that she can handle her own personal care and spends her days dressing herself, taking her medications, eating her meals, and resting (A.R. 142-43).  Plaintiff reported that it is difficult to do anything due to the side effects of her medication which assertedly include severe vomiting and diarrhea (A.R. 143, 146). Plaintiff's sister supposedly prepares the meals, does all house and yard work, and all the shopping (A.R. 144-45).  Plaintiff's only reported activity is watching television (A.R. 146). Plaintiff reportedly could not walk far and used a cane for ambulation, although the cane was not prescribed (A.R. 147-48). Plaintiff's sister reported similar information in a Function Report - Adult - Third Party form dated October 27, 2008.  See A.R. 150-57.

"you have to go through this process first" (A.R. 28).  As of the time
of the hearing, it had been over a year since Plaintiff had even seen
a doctor (A.R. 28).  Plaintiff testified:

> There was nothing more [the doctor] can do to me, for me.
> He said all I can do is go to the county for my, to try to
> get on the list for, I need a liver transplant.  I've
> already gone through both treatments, and there was just –
> there's nothing more they can do medically, other than a
> liver transplant.  And you know, that doesn't mean because
> you're on the list that it might even happen.  I hope it
> does, though.

(A.R. 28-29).

At the hearing, the ALJ observed that there were no medical
records indicating Plaintiff has liver failure or is in need of a
liver transplant, and that Plaintiff's doctor diagnosed stage three
disease, which connotes cirrhosis but not liver failure (A.R. 29-31).
Apparently then retreating from her previous claim of a present need
for a liver transplant, Plaintiff seemed to indicate she had been told
she would need a liver transplant "down the road" (A.R. 31).  Yet, in
a Disability Report - Appeal form, Plaintiff reported that her only
treatment option was a liver transplant (A.R. 171).  Yet again, in
another Disability Report - Appeal form, Plaintiff reported that as of
May 1, 2009, Plaintiff's liver disease was only at stage three (A.R.
181).

///

19

At one point during the hearing, Plaintiff claimed that she had not seen a doctor because she assertedly does not have insurance (A.R. 33). The ALJ observed that if Plaintiff has a treatment need, she can go to an emergency room and be treated without regard to her ability to pay (A.R. 33-35). Plaintiff had not been to any emergency room (A.R. 33).

The ALJ summarized Plaintiff's testimony and statements and found that Plaintiff's medically determinable impairments could reasonably cause Plaintiff's alleged symptoms (A.R. 15). The ALJ found Plaintiff's testimony concerning her limitations less than fully credible, however. The ALJ explained:

> The claimant . . . asserts disability primarily because of her liver disease. Her last treatment note is from May 1, 2009, where her physician stated that she had stage 3 liver disease after being non-responsive to two courses of treatment. The claimant testified she discontinued treatment because her blood count was too low. She asserted her liver damage is so severe that she must get a liver transplant. However, stage 3 disease is consistent with cirrhosis, a step before liver cancer, which normally requires a transplant. There are no medical records indicating liver failure or the need for a transplant. She has not had any treatment in over a year. Despite asserting the need for a liver transplant, her medical condition never caused her to seek emergency room treatment during that period. She testified she essentially relies on her sister

1    for activities of daily living.  However, she overstates her

2    limitations.  A consultative internal medicine examiner

3    found she was capable of working.  The claimant reported

4    depression, but she has not had any mental health treatment

5    and a consultative psychiatric examiner concluded she had at

6    most slight mental work restrictions secondary to her

7    physical complaints.

8                              *  *  *

9    While the claimant asserts side effects from liver

10   treatment, she also overstates her limitations in stating

11   she needs a liver transplant despite no documented need for

12   it and reporting she relies on her sister for virtually

13   everything.  She reported a low blood count, but that does

14   not explain the absence of any treatment since May 1, 2009.

15   Further, the claimant's alleged severity of psychiatric

16   complaints never led her to seek mental health treatment.

17   Thus, the claimant's and her sister's statements are not

18   adequately supported by the objective medical evidence.

19

20   (A.R. 15-16).

21

22       Thus, in rejecting Plaintiff's credibility the ALJ essentially

23   relied on:  (1) the discrepancy between Plaintiff's testimony

24   concerning her alleged need for a transplant and the medical record,

25   which does not mention any need for a transplant; (2) Plaintiff's lack

26   of medical treatment since May 1, 2009, and lack of any psychiatric

27   treatment despite Plaintiff's complaints of depression; and (3) the

28   apparent inconsistency between Plaintiff's reported limitations and

1  the evaluations of the consultative examiners concerning Plaintiff's

2  ability to function.

3

4      As the ALJ correctly pointed out, the medical evidence does not

5  support Plaintiff's testimony that her liver disease is so severe that

6  she must get a liver transplant or she will die.   Although a

7  claimant's credibility "cannot be rejected on the sole ground that it

8  is not fully corroborated by objective medical evidence, the medical

9  evidence is still a relevant factor. . . ."  Rollins v. Massanari, 261

10 F.3d 853, 857 (9th Cir. 2001); see also Brawner v. Secretary of Health

11 and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)

12 (misrepresentations made by claimant in the course of pursuing

13 disability benefits justifies rejection of claimant's credibility).

14 At a minimum, Plaintiff exaggerated during some of her testimony (A.R.

15 28, 31).  Such exaggeration supports the ALJ's finding that Plaintiff

16 was not credible.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144,

17 1148 (9th Cir. 2001) (claimant's tendency to exaggerate is an adequate

18 reason for rejecting claimant's testimony); Bickell v. Astrue, 343

19 Fed. App'x 275, 277-78 (9th Cir. 2009) (same).

20

21     Plaintiff's lack of treatment for her psychiatric complaints and

22 failure to seek any treatment of any kind from May 1, 2009 through the

23 hearing date of September 21, 2010, also supports the ALJ's finding

24 that Plaintiff was not credible.  An unexplained failure to seek

25 medical treatment may discredit a claimant's allegations of disabling

26 symptoms.  See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir.

27 2004); accord Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)

28 (failure to seek medical treatment can justify an adverse credibility

determination); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989)

(same).  While Plaintiff claimed she had not sought liver treatment

since May 1, 2009, because she assertedly had no medical insurance,

the ALJ was not required to accept Plaintiff's explanation for failing

to seek treatment, given: (1) the availability of free or low-cost

medical care; and (2) Plaintiff's failure to explain why she had not

sought psychiatric care at a time when she was being treated for her

liver condition.  Compare Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.

2007) (failure to obtain treatment did not support adverse credibility

finding where the claimant explained the failure as having resulted

from a lack of insurance, and the ALJ did not suggest that this

explanation was "not believable") with Flaten v. Secretary of Health &

Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995) (upholding an

adverse credibility determination where the claimant alleged an

inability to pay but had received other medical care during the

operative time).  If Plaintiff's conditions were as severe as she

claims, one reasonably would expect Plaintiff to have sought

psychiatric care at some point, to have sought treatment in hospital

emergency rooms, or otherwise to have taken steps to be placed on a

liver transplant waiting list.


    Finally, the discrepancy between Plaintiff's asserted limitations

and the findings of the consultative examiners also supports the ALJ's

adverse credibility determination.  See Maier v. Commissioner, 154

F.3d 913, 915 (9th Cir. 1998) ("The ALJ's explanation that [the

claimant] was not credible was supported by the clear and convincing

reason that [the claimant's] testimony contradicts most of the medical

evaluations").  Plaintiff essentially reported that she could not

perform any daily activities beyond personal care.  On physical
examination, Dr. To reported that Plaintiff showed no signs of
abdominal tenderness and had normal muscle tone and mass (A.R. 195-
96).  Plaintiff was taking no medications for her alleged pain (A.R.
194; see also A.R. 139 (listing medications)).  While Plaintiff
reported that she cannot concentrate or remember things (A.R. 135), on
examination Dr. Woodard reported that Plaintiff's intellection
function is grossly intact but that she may have functional attention
deficit and motivational deficit associated with depression and
anxiety (A.R. 191-92).  Even with these symptoms, Dr. Woodard opined
that Plaintiff has only slight mental impairments (A.R. 192).
Plaintiff's testimony contradicted all or virtually all of the medical
evaluations regarding her capacity.

     Because the ALJ's credibility findings were sufficiently specific
to allow this Court to conclude that the ALJ rejected Plaintiff's
testimony on permissible grounds, Moisa v. Barnhart, 367 F.3d 882, 885
(9th Cir. 2004), the Court defers to the ALJ's credibility findings.
See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court
will defer to ALJ's credibility determination when the proper process
is used and proper reasons for the decision are provided); accord
Flaten v. Secretary of Health & Human Services, 44 F.3d at 1464.

///

///

///

///

///

///

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.[12]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   May 25, 2012.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

_____

[12]   The Court has considered and rejected each of Plaintiff's arguments.  Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration.  See generally McLeod v. Astrue, 634 F.3d 516, 522-23 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).